**SURRANO LAW OFFICES**
Attorneys at Law

7114 E. Stetson Dr., Suite 300
Scottsdale, Arizona 85251
Phone: (602) 264-1077
Fax: (602) 264-2213

Charles J. Surrano III (007732) cjs@surranolawfirm.com
John N. Wilborn (013714) jnw@surranolawfirm.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Frink, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| River Source Life Insurance Company, a Foreign Insurer, | **Breach of Contract; Tort (Bad Faith)** |
| Defendant. | |

Plaintiff, as and for her Complaint against the Defendant, River Source Life Insurance Company (hereafter "River Source"), sets forth and alleges as follows:

### Count I: Breach of Contract

1. That at all times relevant herein, the Plaintiff was and so remains a resident of Maricopa County, Arizona.

2. That at all times relevant herein, the Defendant River Source, was a foreign insurer licensed to transact and transacting the business of insurance in Arizona and elsewhere.

3. That, among other things, the Defendant River Source marketed, sold and issued disability income insurance policies in Arizona and other states.

1

4. That the Plaintiff purchased a certain disability income insurance policy from the Defendant, which is more particularly identified by policy number 9100-08434769 issued July 15, 2010.

5. That the aforesaid policy provided, *inter alia*, total disability coverage for disability from one's "regular occupation" at the onset of disability, subject to the policy's elimination period.

6. That the policy specifically defines total disability to mean:

    > [t]hat because of injury or sickness, You are:
    > 1. Unable to perform the material and substantial duties of Your Regular Occupation; and
    > 2. Under the regular care of a physician as described in the Physician Care definition.

7. That at all relevant times herein, the Plaintiff was engaged in her regular occupation as the executive director of a corporate recruitment firm for both for profit and not for profit business organizations.

8. That the material and substantial duties of her regular occupation included extensive communications, both verbal and written, in-person, and telephonic with candidates, employees and persons associated with her business, traveling, driving, writing, typing, use of the computer and personal appearances, among other things.

9. That the base monthly benefit for Total Disability under Plaintiff's policy is $10,000.00 (together with cost of living adjustments).

10. That the Maximum Benefit Period for the payment of Total Disability benefits si to age 67, subject to a 90 day elimination period.

11. That on or about October 21, 2019, the Plaintiff suffered a sudden and severe stroke requiring emergency brain surgery.

12. That the stroke resulted in Plaintiff having, among other things, severe apraxia, *i.e.*, the inability and/or extreme difficulty in initiating and controlling the muscle movements essential to speech.
13. That, in essence, Plaintiff lost the power of speech.
14. That Plaintiff's policy has a Presumptive Total Disability provision which provides, in relevant part, that if Plaintiff loses the power of speech before the age of 65, she will be considered totally and irrevocably disabled (even if she can work).
15. That in addition, Plaintiff has suffered, and continues to suffer from, right-sided weakness, seizures, facial droop, hemiparesis visual deficits, and lethargy.
16. That Plaintiff's stroke and its appurtenant complications and symptoms, rendered her disabled from her regular occupation and, therefore, Totally Disabled, as defined under the policy.
17. That Plaintiff's loss of the power of speech alone qualified her as presumptively totally disabled, even if she could work.
18. That Plaintiff also had a life insurance policy with the Defendant River Source.
19. That premiums for <u>both</u> the life insurance and instant disability policy were paid on the same day, September 17, 2019.
20. That on October 22, 2019, Plaintiff's husband notified the Defendant River Source, via one of its insurance agent, that Plaintiff had suffered a severe stroke and would need to make a claim for disability benefits.
21. That Plaintiff's husband was contacted on October 22, 2019 via voice mail by another agent (Eric Fairbanks) who had sold Plaintiff the policy that it had been cancelled for late payment of the premium, although Plaintiff's husband did not hear the message that day.

22. That the following day, October 23, 2019, Plaintiff's husband personally encountered the agent (Eric Fairbanks) who advised him he had left a voice mail message and that the policy had been cancelled for late payment.
23. That the agent further advised that Plaintiff would have to apply to reinstate the disability policy, but the reinstatement would be denied because of her medical condition.
24. That although the agent claimed a renewal (reinstatement) form had been sent to Plaintiff, it was never completed and sent back.
25. That, in fact, Plaintiff and her husband had never received a renewal (reinstatement) form any time prior to October 23, 2019.
26. That Plaintiff had received a final payment notification on the life insurance policy which reflected a due date of September 6, 2019, after which the policy would lapse.
27. That Plaintiff paid the full amount of premium owing on both policies on September 17, 2019 via ACH transfer.
28. That, although payment was made after the due date of September 6, 2019, the Defendant retained the money for the life insurance policy, keeping it in force without any need or suggestion that it must be reinstated by application and approval.
29. That the Defendant River Source still retains and accepts premium on the life insurance policy, which remains in effect.
30. That the Defendant River Source retained the money on the disability policy for over a month without returning the premium to Plaintiff, notifying her of the policy's lapse (if any) or sending Plaintiff an application for reinstatement before her stroke.

31. That it was not until after the Defendant River Source learned of Plaintiff's claim under the disability policy on or after October 22, 2019, that it sent a refund check for the premium to Plaintiff, dated November 1, 2019.

32. That, upon information and belief, the Plaintiff received a similar Final Payment Notification on the disability policy with an express "due date" of September 6, 2019.

33. That the disability policy provides, in relevant part, that the policy will remain in effect if the payment is made within 31 days of the "due date", otherwise known as the "grace period".

34. That, in fact, payment ws made within 31 days of the express due date of September 6, 2019, specifically on September 17, 2019.

35. That the policy permits the Defendant to reinstate the policies without a reinstatement application if it keeps the overdue premium without requesting a reinstatement application within 45 days, in which case the policy will be reinstated the date the premium is received (September 17, 2019).

36. That the policy further provides as follows:
    > If this policy is reinstated, it will only cover:
    > 1. Injury that occurs on or after the date this policy is reinstated; and
    > 2. Sickness which first **appears** (makes itself known) after this policy is reinstated.

37. That the Defendant River Source kept the disability premium without requesting a reinstatement application within 45 days (November 1, 2019 marked the 45th day); hence, it was reinstated on September 17, 2019, the date the premium was received.

38. That Plaintiff's sickness, *i.e.*, her massive stroke first "appeared" on October 21, 2019, after the policy reinstated.

39. That for the reasons aforesaid, the policy was in effect during the occurance of Plaintiff's disabling condition.

40. That, furthermore, Arizona law provides, in relevant part, that:

    > If any renewal premium is not paid within the time granted the insured for payment, a subsequent acceptance of premium by the insurer or by any agent duly authorized by the insurer to accept such premium, <u>without requiring in connection therewith an application for reinstatement, shall reinstate the policy</u>, provided, however, that if the insurer or such agent requires an application for reinstatement <u>and issues a conditional receipt for the premium tendered</u>, the policy will be reinstated upon approval of such application by the insurer or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the insurer has previously notified the insured in writing of its disapproval of such application…

    A.R.S. §20-1348A

41. That the Defendant River Source, <u>unconditionally</u> accepted the premium paid by Plaintiff on September 17, 2019 without requiring, in connection thereafter, an application for reinstatement.

42. That in the alternative, if the Defendant River Source did require an application for reinstatement, it did not issue a "conditional receipt" for the premium tendered.

43. That by virtue of the Defendant's failure to perform in accordance with the dictates of A.R.S. §20-1348A, as aforesaid, Plaintiff's policy was reinstated *de jure*.

44. That, in effect, coverage existed at the time of Plaintiff's disabling stroke because it never lapsed or was effectively reinstated if it had.

45. That Plaintiff, therefore, had and continues to have a valid and compensable claim under the policy.

46. That the Defendant River Source has failed and refused to pay Plaintiff her Total Disability benefits under said policy.
47. That the failure of the Defendant River Source to perform its obligation to pay said benefits constitutes a breach of the insuring agreement.
48. That Plaintiff has sustained actual damages from such breach of past due benefits and benefits which continue to accrue but have not been paid.
49. That the actions of the Defendant River Source connote and are consistent with an intention not to perform its obligation under the policy in the future and, therefore, constitute a repudiation of the contract (insuring agreement) as a whole.
50. That by reason of Plaintiff's ongoing eligibility for ongoing benefits and the Defendant River Source's repudiation of the insuring agreement, Plaintiff is entitled to an award of not only all back benefits, but also the acceleration and payment of all future benefits in one sum.
51. That because Plaintiff's claim arises out of a contract, she is further entitled to an award of her attorneys' fees. A.R.S. § 12-341.01.

## Count II: Waiver

52. That the Plaintiff hereby re-alleges, restates and reasserts the foregoing as if fully set forth herein.
53. That, upon information and belief, the Defendant River Source is claiming the policy defense of lapse due to non-payment or late payment of the renewal premium on Plaintiff's disability policy.
54. That notwithstanding the foregoing, the Plaintiff paid the full amount of the renewal premium.
55. That the Defendant River Source unconditionally accepted the premium payment, even if late, and held it for over one month.

56. That if at the time the premium was paid the Defendant River Source wished to treat the policy as cancelled, it was obligated to promptly notify Plaintiff of that, and/or return the premium.
57. That, instead, the Defendant River Source kept Plaintiff's premium payment without such notice.
58. That only after learning of Plaintiff's disability and that a claim would be made under the policy did the Defendant River Source then attempt to affirmatively raise lapse as a defense.
59. That Defendant River Source's conduct in keeping the premium money for over a month without asserting the defense of lapse or cancellation is inconsistent with the right to assert such defenses.
60. That, as such, the Defendant River Source has relinquished the right to assert such defenses.

### Count III: Estoppel

61. That the Plaintiff hereby re-alleges, restates and reasserts the foregoing as if fully set forth herein.
62. That Plaintiff relied on the conduct and silence of the Defendant River Source in accepting her premium payment without protest or reservation as evidence that the payment, even if late, was satisfactory.
63. That, under the circumstances, this reliance was reasonable.
64. That the Plaintiff's reasonable reliance has proven to be detrimental to her interests, as the Defendant River Source asserted the defense of cancellation after her calim arose, while at the same time having kept her premium money for over forty-five (45) days.
65. That by reason of the actions of the Defendant River Source, inconsistent with the defense of cancellation, it is estopped from asserting said defense.

66. That coverage obtains in the absence of said defense under the doctrine of estoppel.

**Count IV: Breach of the Duty of Good Faith and Fair Dealing (Bad Faith)**

67. That the Plaintiff hereby re-alleges, restates and reasserts the foregoing as if fully set forth herein.

68. That at all times relevant herein, the Defendant River Source owed Plaintiff, under the insurance contract, an implied at law duty of good faith and fair dealing.

69. That the duty includes equal consideration of Plaintiff's interests compared to the Defendant's own.

70. That although not a fiduciary duty, it nonetheless created "something in the nature of a fiduciary duty" between Plaintiff and Defendant River Source.

71. That this duty required the Defendant River Source, *i.e.*, the insurer, to "play fairly" with its insured, *i.e.*, the Plaintiff.

72. That the conduct of this Defendant was such as to have breached the duty of good faith and fair dealing, and, thus, amounts to "bad faith".

73. That the Defendant River Source's acts of "bad faith" include, but are not limited to:

    a. Treating Plaintiff's life and disability policies disparately, favoring cancellation of one for alleged late payment (disability), while accepting late payment for the other (life) without reservation or cancellation, even though both policies' premiums were paid the same day;

    b. Wrongfully denying coverage and not reinstating the policy in contravention of Arizona law, A.R.S. § 20-1348;

    c. Wrongfully denying coverage on the pretense of lapse, when, in fact, there was none;

    d. Unreasonably failing to return Plaintiff's premium on the disability policy until after Plaintiff's claim was made, even though asserting the policy had lapsed much earlier;

    e. Accepting and keeping Plaintiff's premium money on the disability policy without issuing a conditional receipt, while demanding a reinstatement application, as required by law (A.R.S. § 20-1348);

    f. Accepting Plaintiff's premium payment on the disability policy unconditionally without reinstating the policy as required by law (A.R.S. § 20-1348); and

    g. With no approval of a reinstatement application, holding Plaintiff's premium for some time (45 days) without reinstating the policy as required by law (A.R.S. § 20-1348.

74. That the Defendant River Source, through its agents and representations, knew or reasonably should have known, their actions were unreasonable.

75. That the Defendant River Source has exhibited over time in other cases a pattern of practice of denying valid and compensable claims.

76. That Plaintiff's condition is, and will likely remain, disabling, and entitle her to Total Disability benefits for the maximum benefit term.

77. That by reason of Defendant's bad faith conduct and Plaintiff's permanent disabling condition, Plaintiff is entitled to accelerate all future benefits due under the policy.

78. That the Plaintiff has suffered actual damages as a result of the Defendant's bad faith conduct.

79. That the Plaintiff has also sustained general damages in an amount to be determined at trial by reason of Defendant's bad faith conduct.

80. That the Defendant has acted in a way to serve its own interests, knowing or having reason to have known that its conduct might significantly damage Plaintiff and consciously pursued a course of conduct knowing it created a substantial risk of harm to Plaintiff.
81. That by reason of the forgoing, Plaintiff is further entitled to an award of punitive damages in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff prays for a judgment in her favor and against this Defendant as follows:

### COUNT I: BREACH OF CONTRACT

1. For judgment in Plaintiff's favor and against this Defendant;
2. For an award of Plaintiff's actual damages;
3. For an award of attorneys' fees and costs.

### COUNT II: WAIVER

1. For judgment in Plaintiff's favor and against this Defendant;
2. For an award of attorneys' fees and costs.

### COUNT III: ESTOPPEL

1. For judgment in Plaintiff's favor and against this Defendant;
2. For an award reinstating Plaintiff's disability policy effective September 17, 2019;
3. For an award of attorney's fees and costs.

### COUNT IV: BAD FAITH

1. For judgment in Plaintiff's favor and against this Defendant;
2. For an award of Plaintiff's actual damages, including but not limited to, all back benefits owed to Plaintiff and accelerating all future benefits due under the policy;

3. For an award of general damages in an amount to be determined by the trier of fact;

4. For an award of punitive damages;

5. For an award of attorneys' fees and costs.

Plaintiff hereby demands a trial by jury of all claims herein.

DATED: July 6, 2020.

                                          SURRANO LAW OFFICES

By:   s/Charles J. Surrano, III
       Charles J. Surrano, III
       John N. Wilborn
       7114 E. Stetson Dr., Suite 300
       Scottsdale, Arizona 85251
       Attorney for Plaintiff