**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Frink, | No. CV-20-01327-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| River Source Life Insurance Company, | |
| Defendant. | |

Before the Court are the parties' motions for summary judgment (Docs. 59, 60) which are fully briefed. For the reasons set forth herein, Plaintiff's motion is denied and Defendant's motion is granted in part and denied in part.[1]

**I.     Background**

Plaintiff purchased a disability insurance policy ("Policy") from Defendant on July 15, 2010. Thereafter, the premiums were due annually on July 15th. The Policy provided an additional 31-day grace period for payment of the premium before the Policy would lapse. Additionally, Defendant had internally instituted an extended grace period, which automatically reinstated a lapsed policy if the premium was received within 60 days of the premium due date. With Plaintiff's Policy, the extended grace period would expire on September 13th.

---

[1] Oral argument is denied because the issues are adequately briefed, and oral argument will not aid the Court's decision-making. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

The Policy's "Reinstatement" provisions provided Plaintiff six months after a lapse to submit a reinstatement application along with the past-due payment. Defendant thereafter would have 45 days to approve or disapprove the application:

> If Your policy terminates because a premium is not paid by the end of the grace period You may apply to reinstate the policy at any time until the first unpaid premium is 6 months overdue.
>
> In order to reinstate this policy, 2 requirements must be met. They are:
>
> 1. You must submit a reinstatement application with evidence of Your insurability and the full amount of overdue premium; and
>
> 2. We must approve the reinstatement application.
>
> If We approve the reinstatement application, this policy will be reinstated as of the date of our approval. If We do not approve or disapprove the reinstatement application within 45 days from the date We receive Your reinstatement application and overdue premium, this policy will be reinstated on the 45th day.

(Doc. 59-1 at 19.)

Defendant's practice regarding payments made after the 60-day grace period, at its discretion, was to automatically reinstate some policies but not others. If Defendant decided to automatically reinstate a policy, it did not require a reinstatement application and did not return the premium payment. On the other hand, if Defendant decided not to automatically reinstate a policy, within 45 days of the late payment, Defendant would return the late premium payment and request the insured to submit a reinstatement application.

Historically, Plaintiff had been a late premium payor, never making a timely payment in the 10 years she held the Policy. In 2017, Plaintiff paid 13 days after the contractual grace period. In 2018, Plaintiff's payment was made on September 6, 15 days after the contractual grace period and 6 days after the extended "Due Date" as expressed in the "Final Payment Notice" that year. Plaintiff's late payments were always accepted without lapse, and without explanation for the lack of enforcement of the contractual lapse date.

In 2019, Defendant sent Plaintiff a "Payment Notification" advising her that her annual premium "Due Date" was July 15, 2019. Sending a "Payment Notification" was Defendant's practice. Plaintiff failed to make her premium payment on time. The contractual grace period ended on August 15, 2019. Defendant did not lapse the Policy effective August 15, 2019. Instead, as was its practice, Defendant sent Plaintiff a "Final Payment Notification" informing her that payment must be received by August 30, 2019, or the Policy would lapse. There was no explanation why the deadline was moved to August 30. However, the true deadline, according to Defendant's internal policy, was September 13, 2019.

Defendant received Plaintiff's check, which was dated September 13, 2019, on September 23, 2019.[2] Defendant cashed the payment and held the money in "suspense," while allocating the money to Plaintiff's account, but not applying it to the premium. Defendant treated the Policy as void for non-payment after September 13, 2019. On September 27, Defendant wrote Plaintiff confirming receipt of her late premium payment and explaining that the payment would not be applied because the Policy had lapsed. The letter instructed Plaintiff that she could apply to reinstate the Policy and that a reinstatement application was required to restore her coverage under the Policy. Plaintiff disputes having received the letter.

On October 21, Plaintiff had a stroke and was hospitalized. The next day, Plaintiff's husband spoke to Defendant's insurance agent who informed him that the Policy had lapsed and that a letter requesting a reinstatement application had been sent to her. The agent re-sent the reinstatement application, but Plaintiff never submitted it. Defendant tendered Plaintiff's late premium back to Plaintiff on November 1, 2019.

## II.     Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any

---

[2] Although Plaintiff alleges that she paid her premium on September 13, 2019, by ACH transfer (Doc. 60 at 4), the record cited for that fact does not support it. The record shows Plaintiff paid by check and that it was Defendant's practice to deposit checks the date they were received. Plaintiff's premium payment check was deposited on September 23, 2019. (Doc. 60-8 at 13.)

material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

**III.  Discussion**

Plaintiff argues that Defendant's past acceptance of premium payments after the contractual grace period without terminating the Policy or requiring a reinstatement application amounts to waiver or estoppel. Plaintiff further argues that Defendant's notifications of the final due dates were illusory, amounting to a waiver of strict performance under the contract, because Defendant accepted late payments in the past, beyond the contractual grace period, without explaining to Plaintiff its real deadline. Plaintiff argues accepting late payments without explanation was waiver by conduct, and that Defendant intended to relinquish its contractual right to receive premium payments by 31 days after July 15.

Waiver generally is a question of fact to be determined by the trier of fact. *Jones v. Cochise Cnty.*, 187 P.3d 97, 105 (Ariz. Ct. App. 2008). Waiver by conduct occurs when the acts of an opposing party are inconsistent with an intention to assert the right in question. *Russo v. Barger*, 366 P.3d 577, 580 (Ariz. Ct. App. 2016).

> It is a general rule that, where a custom of dealing develops between an insurer and the insured whereby the policy provision requiring prompt payment of premiums is not enforced, the insurer is precluded from insisting upon strict compliance with the terms of the policy providing for payment of premiums on a date certain without first giving the insured notice thereof within a reasonable time previous thereto. The cases adhering to this rule do so either on the basis of waiver or estoppel, but the result is the same.

*Hagin v. Fireman's Fund Ins. Co.*, 353 P.2d 1029, 1031-32 (Ariz. 1960).

The elements of equitable estoppel are "'conduct by which one . . . induces another to believe and have confidence in certain material facts, which inducement results in acts

- 4 -

in reliance thereon . . . which cause injury to the party thus relying.'" *Sahlin v. Am. Cas. Co. of Reading Pa.,* 436 P.2d 606, 608 (Ariz. 1968) (alterations in original) (quoting *Builders Supply Corp. v. Marshall,* 352 P.2d 982, 985 (Ariz. 1960)).

Defendant's acceptance of premium payments for the past two years after the contractual 31-day grace period is evidence of waiver of the premium payment deadline. Whether Defendant's conduct was *clearly* inconsistent with an intention to assert the right to insist on a timely payment is a question of fact because a factfinder hearing this evidence could reasonably find in favor of either party. Whether Defendant's conduct induced Plaintiff to believe and have confidence that she could pay her premium as late as September 23, and that she relied on that fact when she failed to pay earlier, is a question of fact.

In support of its argument against waiver and estoppel, Defendant cites *Sereno v. Lumbermens Mut. Cas.* Co., 647 P.2d 1144 (Ariz. 1982), but that case is inapplicable. It makes a distinction between the effect of prior conduct of accepting late checks when dealing with a delinquent payment on an existing policy and delinquent payments on a renewal. Here, the Policy was an existing policy with a premium due date that Defendant had not consistently enforced. *Sereno* recognizes the distinction:

> The company can, by accepting delinquent payments on an existing policy, be estopped, either by the policy or its conduct, from imposing the late payments as a bar to coverage. The renewal of a policy is a different matter. The insured must follow the specific provisions of the policy concerning renewal. In the instant case, the notice of July 1978 was an offer to renew or continue. By failing to pay the first installment of the renewal premium, the Serenos did not accept that offer and the policy terminated automatically[.]

647 P.2d at 1146-47.

Whether the "Final Payment Notice" was adequate notice to Plaintiff that strict performance had been reinstated also is a question of fact. "Once strict performance of the contract has been waived as to timely payment, a clear and definite notice to the buyer followed by allowance of reasonable time to bring payments up to date would be necessary in order to reinstate the forfeiture clause of the contract." *Kammert Bros. Enterprises, Inc.*

*v. Tanque Verde Plaza, Co.*, 428 P.2d 678, 682 (Ariz. 1967). Defendant's "Final Payment Notice," without explanation, moved the due date to August 30, 2019. That due date is not consistent with the contractually established deadline and with the prior notice. Moreover, Defendant sent Plaintiff similar notices in the past, yet still accepted payment after that date. A factfinder reasonably could find for either party on this issue.[3]

Defendant is entitled to summary judgment, however, on Plaintiff's claim that the Policy was automatically reinstated, pursuant to the terms of the Policy and/or A.R.S. § 20-1348(A). Plaintiff's theory hinges on the argument that she did not receive the September 27, 2019 letter. Plaintiff argues that there is no evidence that the letter was mailed and that receipt, as opposed to mailing, is required by the statute.

Regarding the transmittal requirements of the conditional receipt, the statute provides that it must be issued. It does not say received. Although the deposition testimony of Defendant's Operations Director established that he did not have personal knowledge or memory of the letter being mailed, the rules of evidence do not require that. His declaration establishes Defendant's ordinary practice for mailing letters such as the September 27, 2019 letter, and the processing notes indicate that a letter had been mailed to Plaintiff. This evidence is admissible as business records of Defendant. *See* Fed. R. Evid. 406, 803(6). Although Plaintiff asserts that she did not receive the letter, receipt is not required under the statute. Her testimony of non-receipt, in light of Defendant's evidence of mailing, is not sufficient to raise a question of fact as to whether the letter was mailed.

Further, the undisputed facts establish that Plaintiff had notice of the reinstatement requirement within the 45-day statutory timeframe through conversations the agent, Eric Fairbanks, had with Cliff Frink between October 22 and October 24. In those conversations, the two discussed the lapse of the Policy due to non-payment, the September 27 letter concerning Defendant's request for a reinstatement application, and Plaintiff's

---

[3] Defendant argues that the internal corporate policy of accepting late premiums is for the good of the customer and therefore cannot be found to be waiver. However, Defendant cites no Arizona authority that holds waiver cannot be found if the allegedly inconsistent conduct benefits the opposing party. In any event, Defendant is in the business of selling insurance. It benefits Defendant to maintain a policy it has sold and to receive a premium payment, even if late.

ability to apply.

Finally, Defendant did not keep Plaintiff's premium payment for 45 days after receipt. Plaintiff's allegation that she paid her premium on September 13, 2019, by ACH transfer is not supported by the evidence. Unrebutted evidence shows that the check was received by Defendant on September 23, 2019. It was returned on November 1, 2019, 39 days after receipt. The requirements for automatic reinstatement set forth in the Policy and in A.R.S. § 20-1348(A) are not met. There has been no reinstatement of the Policy pursuant to the terms of the policy or pursuant to A.R.S. § 20-1348(A).

Based on the Courts ruling regarding waiver and estoppel, Plaintiff's claims of breach of contract and/or anticipatory repudiation are not ripe for resolution.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 59) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's motion for summary judgment (Doc. 60) is **DENIED**, as explained herein.

**IT IS FURTHER ORDERED** that the parties appear for a telephonic trial scheduling conference on **February 11, 2022, at 2:15 p.m**. Call-in instructions will be provided via separate email.

Dated this 31st day of January, 2022.

Douglas L. Rayes
United States District Judge